[Civ. No. 14519. First Dist., Div. Two. Oct. 4, 1950.]

ELLEN S. DENCKER, Respondent, v. DAVID
BERNSTEIN, Appellant.

Christin, Keegan & Carroll and Charles A. Christin for
Appellant.

Theodore M. Monell for Respondent.

NOURSE, P. J.—Plaintiff, Ellen S. Dencker as assignee
of Jack M. Feder, brought an action against defendant David
Bernstein for payment of $3,750 plus interest, claiming the
sum to be due Feder, a real estate broker, for his services
in obtaining a buyer for defendant's property.

On December 15, 1947, appellant entered into a contract
with Feder to sell certain property. The Uniform Authoriza-
tion to Sell read: ''In consideration of the listing for sale of
the property hereinafter described and in consideration of
the services to be performed by the agent, the undersigned,
herein designated as the seller, hereby authorizes Jack M.
Feder herein designated as the agent, exclusively and irrevo-
cably for the term of 30 days from the date hereof, *to sell
and enter into and sign a written contract* in substantial con-

formity with the 'Uniform Deposit Receipt and Agreement of Sale' adopted by the San Francisco Real Estate Board on July 1, 1944, in the name of and for the seller, for the sale and conveyance at the price of One Hundred Thousand and no/100 ($100,000.00) Dollars of the following described property . . .'' (Emphasis ours.)

On January 13, 1948, Feder presented appellant with an agreement of sale signed by Harry Friedman, the buyer. Appellant proposed that his attorney examine the papers and on the following day, January 14, 1948, the final day covered by the authorization, appellant and Feder met with the attorney at his office, a discussion followed, certain changes were made in the terms of the agreement which appellant desired, which changes were attached as riders to the agreement and Feder instructed to have the purchaser initial the riders. On that same day Feder had the riders initialed by Selby E. Pels who had been authorized by Friedman to sign for him and act as his agent. Although Feder testified he phoned Bernstein the evening of January 14 and told him the riders had been initialed, the completed agreement of sale was not delivered to Bernstein on that date. Feder attempted to contact appellant the following day but did not succeed in reaching him until January 16, 1948, at which time appellant refused to consummate the sale on the ground that the authorization of the broker had expired.

The question presented by appellant is: ''After the period of a real estate broker's exclusive authorization has expired, is he entitled to a commission if he then presents a written agreement to purchase dated within the period of the broker's exclusive authorization, and the seller refuses to consummate the sale upon the grounds of the late tender?''

The trial court found ''that plaintiff's assignor secured an offer to purchase the premises upon the terms prescribed by and within the terms of the authorization executed by defendant'' and entered judgment for plaintiff in the sum of $3,750 plus interest.

Appellant contends that the agent, relying upon a written contract, must tender the contract during the period of authorization before the agent may hold the seller liable for the agent's commission. Under the terms of the contract this was not necessary. ■ The contract provided that within the specified time the agent was authorized ''to sell and enter into and sign a written contract . . . in the name of and for the seller, for the sale and conveyance'' of the

property. This the agent did, and furthermore the seller not only had knowledge of such a contract but had approved it and requested Feder to secure the initials of the buyer to the changes, all within the authorized time. There is no question but that plaintiff's assignor, the agent, fully complied with the terms of the contract within the time specified.

We have found no authority which is directly in point. Those which have been cited and those hereinafter referred to relate to the commonly known broker's contract which calls upon him "to find a buyer who is ready, able and willing to purchase" at the terms and price agreed on. Here the owner employed the broker "to sell and enter into and sign a written contract." This the broker did and this was all he was required to do. And the contract which he signed with the purchaser was accepted and approved by the seller.

As for appellant's contention that the agent, relying upon a written contract, must tender the contract during the period of authorization before the agent may hold the seller liable for the agent's commission it is sufficient to say that the broker's contract did not require him to deliver a contract of sale to the seller within the life of the broker's contract. It did not even require him to communicate the fact of sale to the seller within that time. In this respect the case is similar to *Gunn* v. *Bank of California*, 99 Cal. 349, 352 [33 P. 1105], where the court said: "It is, of course, well settled that when a broker employed simply to negotiate a sale of real estate has found a purchaser able, ready, and willing to purchase upon the vendor's terms, his right to the agreed commission is complete, and does not depend upon the final acceptance by the purchaser of a conveyance of the property sold." Later in the opinion the court quotes from *Hayden* v. *Grillo*, 35 Mo.App. 647, the following (p. 353): " 'The object of the vendor is to effect a sale of his property, and when the real estate broker produces a contract executed by a solvent purchaser, he is then entitled to pay for his services, whether the trade is finally consummated or not. . . .' "

"If a real estate broker fully performs his contract, he cannot be prevented from recovering his commission because the owner subsequently changes his mind about making the sale or imposes such additional terms as to postpone a transfer of the title until after the expiration of the time limited. . . . There must be no breach of faith by the owner of property towards the broker who has been employed to secure

a purchaser thereof." *Slotboom* v. *Simpson Lumber Co.,* 67 Ore. 516 [135 P. 889, 136 P. 641, 642].

"Whether failure to complete the contract or transaction negotiated has any bearing upon a broker's right to be compensated for his services depends primarily upon the terms of the employment. While there are some decisions to the effect that there must be an actual performance of the contract negotiated to entitle a broker to his commissions, even though the contract of employment is silent upon the point, the great weight of authority is that unless the broker and his employer have expressly stipulated to the contrary, the broker is entitled to his compensation upon the completion of the negotiations which he undertook, irrespective of whether or not the contract negotiated is ever actually consummated . . ." 8 American Jurisprudence, Brokers, section 179.

Far more certain is the right of a broker to his commission under a contract such as we have here where he is required to "sell and enter into and sign a written contract" within a fixed period of time. The broker having fully performed the contract the seller cannot defeat recovery by adding new conditions to the written contract.

Judgment affirmed.

Goodell, J., concurred.